IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUENDALLYN MICKELWAIT f/k/a Wendy Mickelwait, | )<br>)<br>) |
| Plaintiff, | ) Case No. |
| v. | )<br>) |
| CAVALRY SPV I, LLC and THE LAW OFFICE OF KEITH S. SHINDLER, LTD., a/k/a SHINDLER AND JOYCE, a/k/a THE SHINDLER LAW FIRM, | )<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff QUENDALLYN MICKELWAIT a/k/a Wendy Mickelwait, through undersigned counsel, brings this complaint against Defendants CAVALRY SPV I, LLC and THE LAW OFFICE OF KEITH S. SHINDLER, LTD., a/k/a SHINDLER AND JOYCE a/k/a THE SHINDLER LAW FIRM, and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages for violations of the Fair Debt Collection Practices Act (the "FDCPA").

2. The claims stated herein stem from Defendants' wrongful debt collection activities on an alleged consumer debt, including filing a false affidavit in a collection action, and seeking to collect nearly double the original creditor's charge-off amount.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 1692k (FDCPA).

1

4.	Venue is proper in this District under 28 U.S.C. § 1391, as the events complained of occurred in this District.

**PARTIES**

5.	Plaintiff Quendallyn Mickelwait is a natural person and resident of Illinois, and from whom Defendants attempted to collect an allegedly defaulted credit account with Synchrony Bank/Care Credit.

6.	Plaintiff is a "consumer" as defined by Section 1692a(3) of the FDCPA.

7.	Defendant, Cavalry SPV I, LLC ("Cavalry") is a Delaware limited liability company with its principal place of business in Valhalla, New York.

8.	Cavalry does business in the State of Illinois, including in this District.

9.	Cavalry is a debt collector as that term is defined in Section 1692a(6) of the FDCPA because it uses the mails and telephone in its business, the principal purpose of which is the collection of consumer debts.

10.	Cavalry is also a debt buyer that specializes in buying large portfolios of defaulted consumer debts for pennies on the dollar, the full amount of which it then tries to collect for itself and through other debt collectors.

11.	Defendant The Law Office of Keith S. Shindler, Ltd., a/k/a Shindler and Joyce, a/k/a The Shindler Firm ("Shindler"), is a law firm organized as an Illinois corporation with its principal place of business in Schaumburg, Illinois.

12.	Shindler does business in the State of Illinois, including in this District.

13.	Shindler is a debt collection law firm and it regularly collects consumer debts on behalf of Cavalry.

14.	Shindler is a debt collector as that term is defined in Section 1692a(6) of the FDCPA because it uses the mails and telephone in its business, the principal purpose of which is

the collection of consumer debts, and because it regularly attempts to collect debts owed or due or asserted to be owed or due another.

### FACTS SUPPORTING THE ACTION

15. Most of the debts that Defendants Shindler and Cavalry seek to collect are delinquent revolving credit accounts, usually in the form of credit cards or similar accounts, formerly held by banks.

16. Defendant Cavalry often purchases, or claims to purchase, revolving credit account debts from banks months or years after the bank has charged off the debts.

17. Standard form revolving credit account agreements used by banks provide that the terms of the agreement can be changed from time to time, and that changes beneficial to the consumer such as a reduction in, or waiver of, interest may be effected immediately and without notice.

18. A "charge off" is when the credit account receivable is no longer carried on the bank's books as an asset. Under federal regulations, a bank must charge off a credit card receivable after is has been delinquent 180 days, though it may charge off sooner. Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

19. As a standard practice, and for a variety of sound business reasons, banks may waive certain fees or other charges on a debt at the time of charge off.

20. Among other reasons for this practice, banks do not want to increase the amount of bad debts carried on their books because banking regulations require that the amount of a charged-off debt be counted against the bank's reserve funds as a loss. *See id.*

21. In addition, and also as a standard practice and for a variety of sound business reasons, most banks waive interest on credit card debts and similar revolving account debts after charge off for as long as the debts are held by the banks.

22. Among other reasons for this practice, 12 C.F.R. § 226.5(b)(2) requires banks to send periodic statements on all accounts, including defaulted accounts, for any period during which interest or fees are added to the account. 2 C.F.R.§226.5(b)(2)(I) ("A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account. . . ."). Banks generally prefer to waive the interest and fees to save the expense of preparing and sending statements.

23. On November 6, 2017, Shindler, on behalf of Cavalry, filed a collection action against Plaintiff in the Circuit Court of Cook County, styled as *Cavalry SPV I, LLC v. Wendy Mickelwait*, case number 2017-M1-130810 (the "collection action").

24. The collection action sought to collect a purported revolving account debt originally owed to Synchrony Bank/Care Credit and, on information and belief, incurred for personal, family, or household purposes (the "alleged debt").

25. Plaintiff does not owe and has never owed the alleged debt.

26. The complaint claimed that the amount of the alleged debt was $2,249.10.

27. Synchrony Bank/Care Credit charged off the alleged debt in or around September 2014.

28. On information and belief, at charge off Synchrony Bank/Care Credit reversed a number of accrued fees and other charges.

4

29. The amount of the alleged debt at charge off was $2,000.00.

30. Synchrony Bank/Care Credit reported this $2,000.00 charge-off amount to Equifax on November 24, 2014. *See* **Exhibit A**, redacted pages from Plaintiff's Equifax credit report dated February 27, 2018.

31. On information and belief, Synchrony Bank/Care Credit did not send any billing statements to Plaintiff after it charged off the account.

32. Plaintiff did not receive any billing statements from Synchrony Bank/Care Credit after it charged off the account.

33. According to documents attached to the collection action complaint, Synchrony Bank/Care Credit sold the alleged debt to Cavalry on or about October 29, 2014.

34. On information and belief, when Synchrony Bank/Care Credit allegedly sold the alleged debt to Cavalry, the amount of the alleged debt was $2,000.00, the same amount as when the account was charged off, and the same amount that Synchrony Bank/Care Credit reported to Equifax on November 24, 2014—*after* the sale to Cavalry.

35. Between the date the account was charged off and the date Synchrony Bank/Care Credit sold the alleged debt to Cavalry, Synchrony Bank/Care Credit waived all interest and finance charges on the account, as well as additional fees and other charges that would otherwise have accrued on the account.

36. After Cavalry purchased the alleged debt, it added back onto the account balance the interest, finance charges, and additional fees and other charges that Synchrony Bank/ Care Credit had previously waived.

37. Serving the complaint and summons upon Plaintiff's was a communication directed to Plaintiff, by Cavalry and Shindler, representing that Cavalry had the right to collect

the alleged debt from Plaintiff, and that Cavalry was entitled to add the interest, finance charges, additional fees, and other charges that Synchrony Bank/Care Credit had previously waived.

38. Adding these amounts to the alleged debt is improper. An assignee steps into the shoes of the assignor as of the date the assignor sells the account, and has no right to retroactively reverse the assignor's business decision to waive interest or any fees or charges during a period when the assignee did not hold the account. "The rule is that an assignee of a contract takes it subject to the defenses which existed against the assignor at the time of assignment." *Allis-Chalmers Credit Corp. v. McCormick*, 30 Ill.App.3d 423, 424 (4th Dist. 1975).

39. Upon learning of the collection action, Plaintiff became distressed because Defendants were trying collect a debt from her that she did not owe.

40. Plaintiff was thereafter forced to hire a lawyer to assist her with Defendants' wrongful collection action.

41. The false statements by Cavalry and Shindler regarding Plaintiff's liability for the alleged debt and the amount allegedly owed on the alleged debt were made in connection with the collection of the alleged debt from Plaintiff.

42. Making such false statements was a coercive act calculated to trick Plaintiff into believing that she owed the alleged debt, and to collect more than Cavalry was entitled to collect on the alleged debt.

43. As a debt collector, Cavalry may be held vicariously liable for Shindler's violation of the FDCPA.

44. Plaintiff suffered damages proximately caused by Defendants' misconduct, including but not limited to emotional distress, anxiety, fear, embarrassment, aggravation, wasted time, and inconvenience.

45. Plaintiff suffered an infection shortly after being served with the collection action complaint and summons. Due to the emotional distress and lack of sleep caused by Defendants' misconduct, Plaintiff's infection worsened, and she was admitted to the hospital for treatment.

### COUNT I – VIOLATIONS OF THE FDCPA
### (ALL DEFENDANTS)

46. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

47. § 1692e of the FDCPA states in relevant part that a debt collector, "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. Defendants made false, deceptive and misleading representations in connection with the collection of a debt, in violation of § 1692e by means of the complaint and summons served on Plaintiff.

49. Defendants violated § 1692e by claiming that Plaintiff owed the alleged debt, when she did not owe the alleged debt.

50. Defendants violated § 1692e by seeking to $2,249.10 in the collection action when the enforceable amount of the alleged debt was only $2,000.00.

51. § 1692e(2)(A) of the FDCPA prohibits false representation of "the character, amount, or legal status of any debt."

52. Defendants violated § 1692e(2)(A) by representing in the collection action that Plaintiff was legally liable for the alleged debt when she was not.

7

53. Defendants violated § 1692e(2)(A) by representing in the collection action that the amount of alleged debt was $2,249.10 when it was really, at most, $2,000.00.

54. § 1692e(10) prohibits "use of any false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

55. Defendants violated § 1692e(10) by falsely representing in the collection action that Plaintiff owed the alleged debt when she did not.

56. Defendants violated § 1692e(10) by falsely representing in the collection action that the amount of alleged debt was $2,249.10 when it was really, at most, $2,000.00.

57. § 1692f of the FDCPA states in relevant part that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

58. Defendants violated § 1692f by suing Plaintiff to collect the alleged debt when Plaintiff did not owe the alleged debt.

59. Defendants violated § 1692f by adding on fees and other charges to the alleged debt that the original creditor had waived, which is unfair and unconscionable.

60. § 1692f(1) of the FDCPA prohibits "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

61. Defendants violated § 1692f(1) of the FDCPA by seeking to collect $2,249.10, which amount was not expressly authorized by any agreement or permitted by law.

62. As a result of the foregoing violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorney fees.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a. grant judgment in Plaintiff's favor against Defendants;

    b.  award Plaintiff statutory and actual damages in an amount to be determined at trial;

    c.  award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

    d.  award any other relief this Honorable Court deems equitable and just.

**Plaintiff Demands Trial by Jury.**

Respectfully Submitted,

/s/ *Daniel Brown*
Daniel Brown (ARDC # 6299184)
The Law Office of Daniel Brown
208 S. Jefferson St., Suite 204
Chicago, IL 60661
(773) 453-7410
daniel@mainstreetattorney.com

*Attorney for Plaintiff*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that all Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of Plaintiff's claims. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that such Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

By: /s/ *Daniel Brown*
    Daniel Brown

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorneys' fees have been assigned to counsel.

By: /s/ *Daniel Brown*
    Daniel Brown

## VERIFICATION OF COMPLAINT

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

Pursuant to 28 U.S.C. § 1746, Plaintiff Quendallyn Mickelwait verifies, certifies, and declares as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I have not filed this Complaint for any improper purpose, such as to harass any Defendant, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant named in the Complaint.

4. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___02___ ___28___, ___2018___
              Month      Day      Year

_____
Signature